NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL MURPHY,                   :
                                  :          **Hon. Dennis M. Cavanaugh**
            Plaintiff,            :
                                  :
                                  :              **OPINION**
        v.                        :
                                  :       Civil Action 09-06127(DMC)(JAD)
SHOPRITE and UNITED FOOD AND      :
COMMERCIAL WORKERS, LOCAL         :
1262,                             :
                                  :
            Defendants.           :

DENNIS M. CAVANAUGH, U.S.D.J.:

    This matter comes before the Court upon motion by United Food and Commercial Workers,

Local 1262 ("Defendant") to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons stated herein,

Defendant's motion to dismiss is **denied**.

I.      **BACKGROUND**

    Michael Murphy ("Plaintiff") has brought this action against two distinct entities. The first

Defendant is his employer, Shoprite. The second Defendant is United Food and Commercial

Workers, Local 1262,  the union of which, as a Shoprite employee, Plaintiff is a member. The

instant motion to dismiss was brought only by Local 1262 ("Defendant").

    Plaintiff has been employed by Shoprite Supermarkets since January 5, 1988. Plaintiff, who

is deaf, alleges that in the 21 years of his employment, he has never been provided with interpreters

by Shoprite for meetings, trainings and warnings, that he has been denied a promotion directly due

to his disability, that he has been denied overtime, has had his schedule changed without notice, has been denied his requested days off, and has lost break time and lunch hours because he is unable to hear whenever store managers announce that it is time to break. He maintains that he suffered  these things despite his seniority over non-disabled employees, and that Shoprite acted with discriminatory animus. Moreover, he avers that he has had to endure discriminatory and derogatory remarks made to him by co-workers and managers about his deafness.

The Plaintiff's allegations as to the Union are that they "failed to represent Plaintiff and to advocate on his behalf, and never provided interpreters for any union meetings." (See ECF Doc. 1-1, page ID 13, Complaint). He also avers that the union "did nothing to end the discriminatory treatment Plaintiff has endured." (*Id*). It appears that during his employment Plaintiff filed only one grievance against Shoprite through Local 1262. Subsequent to the filing of the grievance on August 14, 2008, and Plaintiff's complaint to the Equal Employment Opportunity Commission prior to that, a hearing was held  with representatives of both  Shoprite and Local 1262 at which an interpreter certified in American Sign Language was provided by Local 1262. Nonetheless, Plaintiff avers that this was the first and only time that Local 1262 provided him with this accommodation.

Plaintiff's prayer for relief includes a request that the Court enter a declaratory judgment pursuant to Fed. R. Civ. Pro. 57 stating that Defendant's have subjected Plaintiff to discrimination in violation of the New Jersey Law Against Discrimination ("LAD") and Title I of the Americans with Disabilities Act ("ADA"). Plaintiff also requests a permanent injunction ordering Defendant's to cease discrimination against deaf and hearing-impaired employees and union members, and

ordering them to provide sign language interpreters, closed captioning for videos, and other communication devices as appropriate to ensure effective communication for deaf and hearing-impaired employees and union members. Plaintiff also requests a promotion to a managerial position within Shoprite, as well as compensatory and punitive damages, reasonable costs and attorney's fees.

Defendant argues that Plaintiff fails to distinguish between the distinct roles played by Shoprite on the one hand, and the union on the other. As Defendant points out, "Local 1262 is Plaintiff's collective bargaining representative, not his employer."(See ECF Doc. 13-1, page ID # 60, Defendant's Motion to Dismiss). Defendant argues that Plaintiff misconstrues the responsibilities of the union, and that particularly as it relates to employee promotion, this is exclusively within the purview of Shoprite. Defendant argues that because it is not Plaintiff's employer, it is "not the party responsible to make accommodations for him in the workplace."(*Id* at Page ID #63). Moreover, Defendant argues that Plaintiff's claims are preempted by the Federal Labor Management Relations Act, 29 U.S.C. § 185, and as such, are time-barred.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6)

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." <u>Bell</u> at 555-56. The Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That said, something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Id* at 570.

## III.   <u>DISCUSSION</u>

The generalized accusations that Plaintiff makes about Local 1262's obligation to represent him or advocate on his behalf to remedy the discriminatory actions imputed to Shoprite are not availing, and Defendant is correct in objecting to the failure to differentiate between the conduct of Shoprite and the conduct of the union. Nonetheless, the Court declines to dismiss the complaint with regard to Defendant because there are independent allegations teased from the face of the Complaint that the Local 1262 itself failed to accommodate Plaintiff's disability such that he would have been able to avail himself of the union's grievance procedures and representation as to violations of the collective bargaining agreement ("CBA"). Plaintiff alleges, essentially, that the union's failure to accommodate him created a catch-22 situation where he could not communicate what he needed from the Local 1262, nor

4

could he in turn understand what Local 1262 was, or was not, able or obligated to help him with. It is disingenuous on the part of Defendant to pretend that it had no obligation to assist Plaintiff once it was made aware of the allegations against Shoprite. Presumably Plaintiff paid dues to Defendant which entitled him to something other than the mere negotiation of the CBA.[1] If the terms of the agreement could not be enforced as to Plaintiff, even if Defendant was not responsible for the conduct of the employer, they were responsible to rectify the result if it deprived Plaintiff of that to which he was entitled under the CBA. In fact, the CBA[2] states "when all the provisions of this contract are observed you receive the full measure of protection you are entitled to in return for your hours of labor."  Moreover, the agreement continues by promising "an efficient grievance procedure for the orderly and fair settlement of any problem you may encounter during the course of your employment." If Defendant was unable to avail himself of the procedures due to the unwillingness of Local 1262 to provide an interpreter, this promise is rendered utterly hollow, especially in light of the fact that several of the allegations he makes as to Shoprite are violations of the CBA. Local 1262's  responsibility to negotiate the agreement surely extends to its responsibility to see to it that it is not violated. Once Local 1262 was made aware that the CBA had been violated, either because of discriminatory animus or for some other reason, it was their responsibility to see that its terms as written were enforced. It is important to note that this in no way implicates any interpretation of the CBA that would invoke the pre-emption requirement of § 301 of the LMRA as Defendant suggests. There is a

---

[1]At very least, Defendant alleges that Articles 17 and 18 of the CBA were violated by Shoprite due to their discriminatory behavior with respect to Plaintiff.

[2]A copy of the CBA was provided to the Court as part of Defendant's motion to dismiss pursuant to Rule 12(b)(6).

legal distinction between interpreting the CBA, and the union's responsibility to see that it is implemented. The failure to do so may result in an independent tort claim under state law. The Supreme Court decision in *Lingle v. Norge Div. of Magic Chef, Inc*. 486 U.S. 399, 399, 108 S.Ct. 1877, 1878 (U.S.Ill.,1988), in which the Court held that "application of petitioner's state tort remedy was not pre-empted by § 301," and that "an application of state law is pre-empted by § 301 only if such application requires the interpretation of a collective-bargaining agreement" controls this discussion. Plaintiff does not fault Local 1262 for failure to interpret the CBA, but for failure to accommodate his disability in a way that would have made their representation of him as a union member anything other than a fiction. The distinction is subtle but important, and it is not altered by Defendant's suggestion that this Court review the terms of the CBA for purposes of this motion. While it was not Defendant's role to ameliorate the discriminatory conditions that Plaintiff alleges were the result of Shoprite's actions, it was their role to be proactive in, at very least, guiding Plaintiff in the proper use of administrative remedies and grievance procedures available to him prior to August 14, 2008 and thereafter. While it is far from clear that Plaintiff will ultimately prevail on this claim, it is premature at this stage of the proceedings to dismiss the complaint.

The legal question, of course, is to what extent the union was obligated to accommodate Plaintiff, and under what theory. To the extent that Plaintiff contends that Defendant had the same obligation to provide a non-discriminatory work environment that Shoprite had, he is likely incorrect, although it should be noted that 42 U.S.C.A. **§** 12111 provides that "the term "employer" does not include-- **(ii)** a bona fide private membership club *(other than a labor organization)* that is exempt from taxation under section 501(c) of Title 26. (emphasis

added). Moreover, "covered entities" subject to the provisions of **§** 12111 specifically mention "labor organizations."[3]

We need not reach that determination, however, because the Court finds that the union was most likely a place of public accommodation within the broad interpretation of that phrase favored by New Jersey law, although that is ultimately a factual question. Although the union is not a "place" within the common usage of the word, the Court is specifically instructed that the list of entities enumerated in section N.J.S.A.10:5-1 et seq. is *"non-exhaustive,"* and that *"places of public accommodation are not limited to those set forth in the statute. Our 'statutory definition of '[a] place of public accommodation' is extremely broad', and '[t]he term is said to 'include, but not be limited to,' a list of over 50 types of places." Thomas v. County of Camden,* 386 N.J.Super. 582, 902 A. 2d 327, 332 (N.J. Super., 2006) (internal citations omitted). Even the Supreme Court has acknowledged this, commenting that "New Jersey's statutory definition of '[a] place of public accommodation' is extremely broad." (See *Boy Scouts of America v. Dale,* 530 U.S. 640, 656-657, 120 S.Ct. 2446, 2455 (U.S.N.J.,2000). In commenting favorably about New Jersey's broad interpretation of the phrase, New York's Court of Appeals noted, "the place of the public accommodation need not be a fixed location; it is the place where petitioners do what they do." *U.S. Power Squadrons v. State Human Rights Appeal Bd.*, 59 N.Y.2d 401, 411, 452 N.E.2d 1199, 1204, 465 N.Y.S.2d 871, 876 (N.Y.,1983). This is significant because the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-4.1. ("LAD") provides that "[a]ll persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public

---

[3]The Court notes that the union Defendant is not being sued pursuant to **§** 12111, but only on a theory of violating New Jersey state law. Nonetheless, the Court finds the language of the Federal statute instructive.

accommodation... without discrimination because of race, creed, color, national origin, ancestry, age, marital ststus, affectional or sexual orientation, familial status, disability, sex, gender identity...subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right." Moreover, as detailed in the New Jersey Administrative Code, NJADC 13:13-2.7, section 1(b); "it is an unlawful employment practice for any *labor organization* to discriminate on the basis of *disability* with respect to hiring, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment, *representation, grievances or any other matter directly or indirectly related to membership* or employment by such an organization." (Emphasis added). As detailed by a case in our district with somewhat analogous facts, *Gallo v. Hamilton Tp. Police Dept.*, 2006 WL 2000135, 5 (D.N.J., 2006), "all of the provisions of the act [LAD]... shall be construed to prohibit any unlawful discrimination against any person [who] is disabled."

The Court is cognizant that there may be a difference between discriminating against an individual and a failure to accommodate his disability if that requires extraordinary and unreasonably expensive means, or if there are other reasons why doing so might be overly burdensome or unnecessary. In *Gallo*, the Plaintiff alleged that he had been discriminated against because Defendants failed to provide him with an interpreter, thus denying him the right and ability to effectively communicate as provided to non-disabled individuals. The Court held that "all of [Defendant's]  arguments, such as the plaintiff's 'limited interaction'  with [Defendants] or his ability to demonstrate discrimination, are factual issues inappropriate for resolution on a motion to dismiss." (*Id.* at 5). So too here, where the extent to which providing interpreters for union meetings was a reasonable accommodation is a fact-specific question

8

outside the scope of a 12(b)(6) motion. Certainly, though,  if a union member were confined to a wheelchair, and the only access to a union meeting was up a flight of stairs, it would seem unreasonable not to relocate the meeting to a place with wheelchair access. Whether the same can be said about the obligation to provide American Sign Language interpreters for union meetings is an open question. It should be noted, however, that Plaintiff's disability is equally significant, and that without the accommodation he requested, the denial of meaningful access to benefit from his union membership was equivalent. [4]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **denied**. An appropriate Order follows this Opinion.

S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.

Date:   December   23 , 2010
cc:     Hon. Joseph A. Dickson, U.S.M.J.
        Counsel of Record

---

[4]The Court in, *Borngesser ex rel. Estate of Borngesser v. Jersey Shore Medical Center* 340 N.J.Super. 369, 374, 774 A.2d 615, 618 (N.J.Super.A.D.,2001) cited "a recent law review article [that] has commented upon the use of ASL and its uniqueness: Individuals who are deaf have unique communication difficulties that vary tremendously in light of the communication mode of each individual. Many deaf individuals in the United States utilize American Sign Language (ASL) as their primary language and means of communication. Although derived from English, ASL is a distinct language "with a separate historical tradition, and separate morphological and syntactic principles of organization." For example, while an English speaking person might ask "[h]ave you been to San Francisco?," an ASL user might sign " "[t]ouch San Francisco already you?" " While an English speaking person might ask, "What are your hobbies?," an ASL user might sign, "Time offdo do do?" Moreover, ASL is based on a limited number of signs representing primarily concrete terms, and thus the average ASL user has a limited knowledge of English words." (Citing [Bonnie Poitras Tucker, *Access to Health Care For Individuals with Hearing Impairments,* 37 *Hous. L.R.* 1101, 1105-06 (2000) (footnotes omitted).]

9